UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY J. BROOKS,

                Plaintiff,                        Civil Action No.
                                            10-cv-13717

vs.

                                            PAUL D. BORMAN

CENTRAL IRRIGATION SUPPLY, INC.,              UNITED STATES DISTRICT JUDGE

                Defendant.

_____/

**OPINION AND ORDER**
**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN**
**LIMINE (Dkt. No. 35),**
**(2) GRANTING PLAINTIFF'S MOTION IN LIMINE (Dkt. No. 36), and**
**(3) GRANTING PLAINTIFF'S MOTION TO QUASH (Dkt. No. 41)**

      This is an employment discrimination case. Mary J. Brooks ("Plaintiff") alleges that she was

demoted and laid off by her former employer, Central Irrigation Supply, Inc. ("Defendant"), because

she is a woman and was pregnant. On September 17, 2010, Plaintiff filed a Complaint alleging Title

VII sex and pregnancy discrimination and retaliation. (Dkt. No. 1.) On November 28, 2011, the

Court granted in part and denied in part Defendant's Motion for Summary Judgment, dismissing

Plaintiff's pregnancy discrimination claim, and finding that an issue of fact existed as to Plaintiff's

sex discrimination claim. (Dkt. No. 28.) A jury trial in this matter is scheduled to begin on August

21, 2012.

      Now before the Court are Defendant's Motion In Limine, filed on June 6, 2012 (Dkt. No. 35),

and Plaintiff's Motion In Limine, filed on June 7, 2012 (Dkt. No. 36). Defendant filed a Response

to Plaintiff's motion on June 13, 2012. (Dkt. No. 38.) Plaintiff filed a Response to Defendant's

motion on June 21, 2012. (Dkt. No. 39.) Defendant filed a Reply on June 27, 2012. (Dkt. No. 40.)

Plaintiff did not file a reply in support of her motion. The Court held a hearing on July 11, 2012, and

gave Defendant leave to file a supplemental brief, which it filed on July 18, 2012. (Dkt. No. 43.)

On July 13, 2012, Plaintiff filed a Motion to Quash Depositions of Christine Jenkins and

David Truttman. (Dkt. No. 41.) Defendant responded on July 17, 2012. (Dkt. No. 42.)

For the reasons stated below, the Court will:

1. GRANT in part and DENY in part Defendant's Motion In Limine,

2. GRANT Plaintiff's Motion In Limine, and

3. GRANT Plaintiff' Motion to Quash.

## I. BACKGROUND

The relevant facts regarding the instant motions were summarized in the Court's Opinion and

Order on Defendant's Motion for Summary Judgment:

> Defendant is a national company based in New York that sells
> agricultural and irrigation equipment to commercial customers. It is
> 95% owned by Bernardo Luciano. Defendant has 35 branches
> nationwide, but only three female branch managers.
>
> In May 2007, Plaintiff was hired to work as a counter sales
> person at Defendant's Commerce Township location in Michigan.
> After about one year, Plaintiff was promoted to a branch manager
> position. Plaintiff was one of two female branch managers in
> Michigan, with the other female branch manager located in Troy,
> Michigan. However, the manager at the Troy location was later
> demoted and replaced by a male branch manager. (Pl.'s Resp., Ex.
> RX, Sparks Dep. 43.)
>
> In early 2008, Plaintiff became pregnant. Although
> Defendant's employee manual provided for 12 weeks of unpaid leave
> pursuant to the Family Medical Leave Act ("FMLA"), Defendant did

not have 50 or more employees within 75 miles of its Commerce
Township location. Plaintiff was thus technically excluded from the
FMLA's provisions. *See* 29 U.S.C. § 2611(2)(B)(ii). However,
Plaintiff was assured by Defendant's Human Resources department
that she would be allowed 12 weeks of unpaid leave and was
guaranteed to get her job back at the end of her leave. (Pl.'s Resp.,
Ex. 3, Sorvillo E-mail.) Plaintiff worked throughout her pregnancy
and began her leave on October 4, 2008, the day she gave birth to her
son.

On December 8, 2008, while Plaintiff was still on maternity
leave, Defendant hired Mark Natale. The New Hire Form completed
for Natale reflects that he was hired for the "Store Manager" position
at the Commerce Township location. (Pl.'s Resp., Ex. 7, New Hire
Form.) However, Defendant states that "[f]rom October 2008 to
February 2009 there was no manager [at the Commerce Township
location]. The Regional Manager, Terry Krohn, covered the store and
Mark Natale was then a counter person." (Def.'s Resp. to Interrogs.
4.) Natale stated at his deposition that he believed he was hired to
replace Plaintiff in December, but that Defendant told him not to tell
any other employees because Plaintiff's spouse, Christian Brooks
("Christian"), also worked at the Commerce Township location.

( . . . . )

Plaintiff planned to return to work at the end of her 12-week
leave on December 29, 2008. Plaintiff alleges that when she
informed Defendant of her planned return date, her regional manager,
Terry Krohn, informed her that he was not expecting her to return at
that time. Plaintiff claims that she then called Bernardo Luciano, who
explained that "he was reorganizing some of the employees and was
not aware of where [Plaintiff] would end up." (Pl.'s Resp., Ex. MB,
M. Brooks Dep. 28.) ( . . . . )

Rex Sparks, who worked as a salesman for Defendant at the
time Plaintiff was on maternity leave, stated that Luciano did not
want Plaintiff to return from her leave because Luciano wanted a
male store manager at the Commerce Township branch.

> A   Bernardo's told me the same thing also
> personally, many times, that he didn't want a,
> I can't say the word, an "f" woman –

3

Q    Okay.

A    – running the branches.

Q    You can say it. If that's what he said, say it.

A    Okay, I hate to say, "A fucking woman running his branches." He said that to me personally. I know he said it to another of the other salesperson, Joe Biondo, at the same time. I heard it at least three or four times, at least, from Bernardo, that he did not like women working his branches, and he had two of them in Michigan.

(Sparks Dep. 13.)    Sparks also testified that, according to Terry Krohn, Luciano was concerned about potential time off that Plaintiff would request due to her child.

Q    Okay. And at some point, did Mr. Krohn ever discuss with you Mary's return?

A    He basically said that she's been trying to come back, but Bernardo was dragging his feet on bringing her back, and the biggest reason was now she has a baby also.

( . . . . )

A    The biggest issue he had about her, now she was a mother, if there's a problem with the child, she's not going to be able to come in, somebody's going to have to take care of it, somebody's going to have to cover for her; that was his big issue, other than being a woman.

(Sparks Dep. 11-14.)

(Op. and Order Granting Granting in Part Defendant's Mot. Summ. J. 1-6.)

Plaintiff was eventually allowed to return to work, but was moved into a different position

and, shortly thereafter, terminated.

## II. LEGAL STANDARD

A motion in limine includes "any motion, whether made before or during trial, to exclude anticipated or prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). "This preliminary ruling allows the parties to consider the court's ruling in formulating their trial strategy." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). A ruling on a motion in limine "falls entirely within the discretion of the district court." *Id.*

## III. ANALYSIS

### A. Defendant's Motion In Limine

Defendant seeks to exclude portions of testimony from three witnesses. Specifically, Defendant seeks to exclude Plaintiff's testimony concerning her pregnancy, Rex Sparks' testimony regarding Luciano's statements, and testimony regarding employment actions affecting Plaintiff's husband, Christian Brooks.

#### *1. Testimony Regarding Plaintiff's Pregnancy*

Defendant argues that, because the Court has dismissed Plaintiff's claim for pregnancy discrimination, Plaintiff should be precluded from testifying about her pregnancy. Defendant asserts that any testimony about Plaintiff's pregnancy is irrelevant, and if it is relevant, it is unfairly prejudicial, because it could confuse the issues and cause the jury to automatically conclude that Plaintiff was discriminated against due to her sex, without considering necessary factors to a sex-discrimination claim.

In response, Plaintiff argues that testimony regarding her pregnancy is factually necessary to explain to the jury why she was on leave from work. Plaintiff also argues that the testimony is

5

legally necessary to establish the "protected activity" element of her retaliation claim. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009) (providing the elements required to establish a retaliation claim are: (1) the plaintiff "engaged in activity protected by Title VII; (2) the defendant knew of her exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action.").

Defendant contends that Plaintiff can still argue her retaliation claim based on sex discrimination, without referencing Plaintiff's pregnancy. Defendant further argues that it is sufficient to state that Plaintiff took a leave of absence for 12 weeks, and she need not refer to her pregnancy to convey a logical chronology of events leading up to her termination.

Under Federal Rule of Evidence 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Whether Plaintiff engaged in protected activity, and whether Defendant knew she was engaged in protected activity, is part of Plaintiff's retaliation claim. Plaintiff's pregnancy does tend to make Plaintiff's engagement in protected activity more probable. Further, the fact that Plaintiff worked throughout her pregnancy and did not begin her leave until she gave birth, is circumstantial evidence that Defendant had notice of the pregnancy and Plaintiff's intention to take a leave. Accordingly, testimony regarding Plaintiff's pregnancy is relevant under Rule 401.

Nevertheless, relevant evidence may be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

or misleading the jury . . . ." *See Dortch v. Fowler*, 588 F.3d 396, 406 (6th Cir. 2009) (Gibbons, J., concurring) (finding that evidence was properly excluded by the trial court "because its probative value was slight and its potential for prejudice and jury confusion significant.").

In the instant matter, the danger of confusion of the issues and unfair prejudice to Defendant does not "substantially outweigh" the probative value of the testimony regarding Plaintiff's pregnancy. Any potential confusion can be addressed through a special jury instruction stating that Plaintiff's pregnancy should not be considered in deciding whether Defendant's termination decision was motivated by sex discrimination. This special instruction would also address Defendant's argument regarding unfair prejudice. Accordingly, the Court will allow testimony regarding Plaintiff's pregnancy.

*2. Rex Sparks' Testimony*

Defendant argues that the anticipated testimony from Rex Sparks regarding Bernardo Luciano's comments about women is inadmissible hearsay. Plaintiff argues that Bernardo Luciano's statements are admissible under Rule 801(d)(2) as admissions of a party opponent, and alternatively, that the statements are admissible under the Rule 803(3) hearsay exception as statements of his then-existing mental, emotional, or physical condition.

At his deposition, Sparks testified that the regional manager at the time, Terry Krohn, told him that Luciano "was dragging his feet on bringing [Plaintiff] back," and that Luciano would "ride [Krohn's] rear end on this thing, about having a woman working at the branch." (Sparks Dep. 12.) Sparks also testified that Luciano "told [him] the same thing also personally, many times," that Luciano did not want "a fucking woman running his branches." (Sparks Dep. 13.)

In its Opinion and Order on Defendant's Motion for Summary Judgment, the Court

7

previously held that Luciano's statements regarding women running his branches fell under the Rule 803(3) hearsay exception for then-existing state of mind. (Op. and Order Granting Granting in Part Defendant's Mot. Summ. J. 20-21); *see also Midwest Guaranty Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 917 (E.D. Mich. 2003). Rule 803(3) provides an exception to the general rule of inadmissibility for hearsay statements where a statement refers to: "the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . ."

Sparks testimony that Luciano personally told him that he did not want "a fucking woman running his branches" qualifies as a statement of Luciano's then-existing state of mind. Specifically, it is a statement allegedly made by Luciano that was contemporaneous with his then-present feelings about female branch managers. Accordingly, it is squarely within the exception provided in Rule 803(3).

The testimony regarding what Krohn told Sparks about other alleged statements by Luciano is a different matter. While Luciano's statements to Krohn may also fit within the Rule 803(3) exception, Krohn's statements to Sparks are also out-of-court statements offered for their truth, and are thus hearsay and inadmissible unless they qualify under an exception.

Plaintiff argues that both Luciano's and Krohn's statements are admissible as non-hearsay as Rule 801(d)(2) admissions by a party opponent. The Rule explicitly includes statements "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." FRE 801(d)(2)(D). Plaintiff argues that, although Luciano and Krohn are not named parties, they were agent's of Defendant Central Irrigation at the time the

8

statements were made. Plaintiff further argues that, because Krohn and Luciano were both managers over Plaintiff, their statements regarding her employment are within the scope of their agency with Defendant.

While it is arguable that Luciano's statements are within the scope of agency, Krohn's statements to Sparks regarding what he heard from Luciano is not within the scope of his employment. *See Grubb v. YSK Corp.*, 401 Fed. Appx. 104, 110 n. 3 (6th Cir. 2010) (unpublished) (noting that a statement by an employee to a witness, in which the employee reported what he had heard from another employee, was not an admission, "because McFann's retelling of Harper's remarks to Duffy is not within the scope of McFann's employment."). Accordingly, Sparks cannot testify about the remarks he claims Krohn heard from Luciano.

*3. Transfer and Layoff of Christian Brooks*

Defendant argues that Plaintiff should not be permitted to offer testimony that Plaintiff's husband, Christian Brooks, was asked to transfer to a different location, and was eventually laid off, as retaliation towards Plaintiff. Defendant argues that testimony regarding Christian's employment with Defendant is not relevant to Plaintiff's claims in the instant case, and that it is likely to cause confusion of the issues before the jury. Defendant also argues that Plaintiff and her husband have filed a companion family responsibility lawsuit in state court, so if testimony about Christian's employment influences the jury, it will result in a windfall for Plaintiff.

Plaintiff argues that the testimony is admissible under *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). The *Spring/United Management* case dealt with the admission of "me too" evidence of discrimination by other managers, in the context of an age discrimination case. Specifically, the Supreme Court held that such evidence was not admissible or

9

inadmissible *per se*:

> The question of whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case. Applying Rule 403 to determine if evidence is prejudicial also requires a fact-intensive, context-specific inquiry. Because Rules 401 and 403 do not make such evidence *per se* admissible or *per se* inadmissible, and because the inquiry required by those Rules is within the province of the District Court in the first instance, we vacate the judgment of the Court of Appeals and remand the case with instructions to have the District Court clarify the basis for its evidentiary ruling under the applicable Rules.

*Id.*

In the instant case, Plaintiff is not offering Christian's testimony as "me too" evidence of other similar discrimination, but rather offers it as evidence of Defendant's retaliatory actions after Plaintiff accused Defendant of discriminatory treatment.

As discussed *supra*, the definition of relevant evidence under Rule 401 is broad. Surely Christian's testimony concerning actions Defendant took with respect to his employment after Plaintiff accused Defendant of discrimination is relevant to Plaintiff's retaliation claim. The issue is thus whether the probative value of the evidence is outweighed by unfair prejudice or potential confusion of the issues. *See* FRE 403.

The testimony is probative evidence of Defendant's plan to force Plaintiff to quit, or otherwise to retaliate against her claims of discrimination. The danger of confusion of the issues before the jury is slight, as the jury can be instructed that Christian Brooks is not a plaintiff and his loss of employment should not be considered in determining Defendant's liability or Plaintiff's damages. Accordingly, Christian Brooks may testify regarding his transfer and layoff.

10

To summarize, Defendant's Motion In Limine is granted with regard to Rex Sparks' testimony about what Terry Krohn heard from Bernardo Luciano. All other requested relief is denied.

**B. Plaintiff's Motion In Limine**

Plaintiff seeks to have the deposition testimony of David Truttman, Plaintiff's former supervisor, admitted at trial in place of live testimony. Plaintiff argues that Truttman moved to Wisconsin on July 10, 2012, prior to the start of trial, and refuses to appear "unless someone paid for his plane ticket." (Pl.'s Mot. 4.) Plaintiff asserts that paying for Truttman's flight to and from Wisconsin "is an inconvenience and a burdensome expense to the plaintiff." (*Id.*) Plaintiff relies on Federal Rule of Civil Procedure 32(a)(4)(B), which provides that a party may use the deposition of a witness if the court finds "that the witness is more than 100 miles from the place of hearing or trial . . ., unless it appears that the witness's absence was procured by the party offering the deposition[.]"

Federal Rule of Civil Procedure 32(a)(4)(E) notes that, in considering use of a deposition, courts should give "due regard to the importance of live testimony in open court[.]" "The preference for live testimony . . . is because of the importance of cross-examination, 'the greatest legal engine ever invented for the discovery of truth.'" *White v. Illinois*, 502 U.S. 346, 356 (citation omitted).

Defendant's counsel does not argue that she was denied the opportunity to cross examine Truttman at his deposition. Rather, she admits that she had the opportunity, but decided to forego it at the time Truttman's deposition was taken on May 4, 2011, because there was no indication at that time that he would be unavailable at trial. Nevertheless, the Court notes that there are innumerable circumstances that could have occurred between May 2011 and the August 2012 trial

11

date that could have resulted in Mr. Truttman's unavailability. The fact that Mr. Truttman is moving to Wisconsin and falls under Rule 32(a)(4)(B), rather than mortally ill or imprisoned pursuant to Rule 32(a)(4)(C), makes no difference. Either circumstance meets the definition of unavailability and permits the use of the deposition transcript at trial under the Federal Rules.

Furthermore, Defendant filed its response to Plaintiff's motion in limine on June 11, 2012, a month before Truttman was scheduled to move. Defendant thus had a full month to schedule a *de bene esse* deposition of Truttman. Instead, Defendant's counsel chose to rely on her response to Plaintiff's motion and do nothing.

The Court will grant Plaintiff's motion in limine and allow the use of Truttman's deposition testimony at trial. Alternatively, if agreed to by the parties, Truttman's testimony may be admitted via a video *de bene esse* deposition, discussed *infra*.

## C. Plaintiff's Motion to Quash

On June 29, 2012, Defendant's counsel noticed a *de bene esse* deposition for Plaintiff's mental health counselor, Dr. Christine Jenkins, on July 24, 2012, at the Mitchell Airport in Milwaukee, Wisconsin. After the July 11, 2012 hearing on the motions in limine, Defendant's counsel noticed a second *de bene esse* deposition for David Truttman, on July 25, 2012, also at the Milwaukee airport. Plaintiff now seeks to quash both deposition notices, arguing that Plaintiff's counsel is not available to attend the depositions in Wisconsin, that Defendant's counsel never attempted to arrange for a mutually agreeable time for the depositions, and that the depositions are improper because discovery is closed. Defendant claims that the depositions are not last-minute, because Plaintiff's counsel was given almost 30 days notice of Dr. Jenkins' deposition, and two weeks notice for David Truttman's deposition. Defendant requests that, if the Court grants

Plaintiff's Motion, the trial should be adjourned and Defendant's counsel should be reimbursed for the non-refundable hotel room she arranged for the witnesses.

On July 20, 2012, the Court rescheduled the trial on this matter for August 21, 2012. The parties therefore have almost 30 days to find a mutually agreeable arrangement for the *de bene esse* depositions of Dr. Jenkins and David Truttman. Plaintiff's motion to quash as to the depositions on July 24 and 25 is thus granted. Defendant's counsel is denied costs for the non-refundable hotel room.

## V. CONCLUSION

For the reasons stated above, the Court will:

1. GRANT in part and DENY in part Defendant's Motion In Limine,

2. GRANT Plaintiff's Motion In Limine, and

3. GRANT Plaintiff's Motion to Quash.

**SO ORDERED**.

Dated: 7-23-12
Detroit, Michigan

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE